UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHAQUAN FRANKS,

                                        Plaintiff,

        v.                                                      9:18-CV-1282
                                                                (GTS/TWD)

A. RUSSO, et al.,

                                        Defendants.
_____

APPEARANCES:

SHAQUAN FRANKS
Plaintiff, pro se
12-A-1370
Wende Correctional Facility
P.O. Box 1187
Alden, NY 14004


GLENN T. SUDDABY
Chief United States District Judge

## DECISION AND ORDER

## I.      BACKGROUND

        Pro se plaintiff Shaquan Franks commenced this action in the United States District

Court for the Western District of New York ("Western District") in May 2018, by filing a

complaint, together with an application to proceed in forma pauperis ("IFP") and motion for

preliminary injunctive relief.  Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"); Dkt. No. 3

("Preliminary Injunction Motion").[1]

_____

        [1]  Plaintiff's complaint is not signed or dated.  *See* Compl. at 17.  Plaintiff's IFP Application is dated May
17, 2018.  *See* IFP Application at 2.  For purposes of this Decision and Order only, the Court will assume that
plaintiff submitted his complaint for filing on or about the same date that he prepared his IFP Application.  *See*
*Vilchel v. Connecticut*, No. 3:07-CV-1344, 2009 WL 179804, at *2 (D. Conn. Jan. 23, 2009) (applying "prison

By Decision and Order filed October 31, 2018, Western District Judge Elizabeth A. Wolford granted plaintiff's IFP Application and severed and transferred the portion of plaintiff's claims regarding events that occurred at Sullivan Correctional Facility to the Southern District of New York, and the portion of plaintiff's claims regarding events that occurred at Eastern Correctional Facility ("Eastern C.F."), as detailed on pages 3, 6-9, and 24-52 of the complaint, to the Northern District of New York.  *See* Dkt. No. 11 ("Transfer Order") at 8.[2]  This action was transferred to this District on November 1, 2018.  Dkt. No. 12.

## II.    DISCUSSION

### A.    Legal Standard for Review of the Complaint

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d

---

mailbox rule" based on the date of the inmate in forma pauperis application submitted with undated complaint).

[2]  The page numbers cited herein are those assigned by the Court's electronic filing system, CM/ECF. The allegations in plaintiff's complaint appear on pages 1-17.  Pages 18-94 are exhibits to the complaint.

Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Therefore, the Court must determine whether plaintiff may properly maintain his complaint before permitting him to proceed. Although a court has the duty to show liberality towards pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), a court also has the responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis. "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer*, No. 9:07-CV-1241 (TJM/RFT), 2008 WL 268215, at *1 n.3 (N.D.N.Y. Jan. 29, 2008) (citation omitted), as well as "to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Id.* at 325.

When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

3

544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*

**B.      Summary of Plaintiff's Complaint**

The portion of this action that has been transferred to this District pertains to claims arising out of plaintiff's confinement at Eastern C.F.  *See generally* Compl.  The following facts related to plaintiff's confinement at Eastern C.F. are set forth as alleged by plaintiff in his complaint.

Plaintiff suffers from the eye disease "keratoconus."  Compl. at 6.  On October 4, 2017, while plaintiff was incarcerated at Eastern C.F., he was taken to the Albany Medical Center for a cornea transplant.  *Id.*  As a result of the surgery, plaintiff received twenty (20) stitches in his left eye, which was covered with an "eye shield."  *Id.*

Upon plaintiff's return to Eastern C.F., he was housed in the facility hospital.  Compl. at 6.  Between October 4, 2017, and October 11, 2017, plaintiff was denied recreation even though defendant Doctor Mikhail Gusman informed "security staff" that it was permissible for plaintiff to engage in recreation.  *Id.*

Plaintiff complained to Corrections Sergeant Nicholas Tacti (not a party) about being denied recreation, and was told by Corrections Lieutenant Kenneth Letus (not a party) on October 11, 2017, that he is "supposed to get rec[.]"  Compl. at 6.  However, defendant Doctor Loricchio Andola told plaintiff that he cannot receive recreation while in the facility

4

hospital, and therefore had to choose between recreation and staying in the facility hospital. *Id.* Plaintiff stated to defendant Andola that he is entitled to recreation "by law." *Id.* In response, defendant Andola "kicked [plaintiff] out [of] the [facility] hospital and sen[t] [him] back to the [special housing unit]." *Id.*

The special housing unit ("SHU") was "very dirty[,]" which plaintiff communicated to unidentified nurses. Compl. at 7. Plaintiff also advised defendants Gusman and Andola about the "high risk" of him contracting an eye infection, but they "refuse[d] to send [him] back to the facility hospital cause they don't want to give [him] 'rec' while [he's] up there[.]" *Id.* Plaintiff "wrote this up" to the Superintendent of Eastern C.F., defendant William Lee, but "his high ranking authoritie[s] refuse[d] to intervene with the on going [sic] harassment of retaliation[.]" *Id.*

At an unidentified date, plaintiff suffered "a mental/emotional breakdown" and was prescribed medication for depression and anxiety. Compl. at 7. Despite suffering these adverse health conditions, plaintiff still did not receive a "reasonable accommodation" or have his medical permits "honored[.]" *Id.*

Defendant Lee and "his high ranking authoritie[s]" failed to intervene in the ongoing harassment "as a form of punishment[.]" Compl. at 8. At the same time, "Medical" continually denied plaintiff "adequate medical care[,]" and the "CO's" failed to follow the "PIMS program put in place by Albany even after [plaintiff] wrote a grievance on 'Lt. K. Simmons' for not moving [his] PIMS level up after [plaintiff] did [his] 30 days post adjustment[,]" and despite the fact that defendant DSS A. Russo "told them to move [his] PIMS level[.]" *Id.* Instead, and in response to plaintiff's grievance, Lt. K. Simmons had plaintiff "extracted" from his SHU cell, after which plaintiff was subjected to "excessive force"

5

by unidentified corrections officials, who "popped" his stitches and injured his chest. *Id.* at 8-9, 22. As a result of the use-of-force incident and the refusal to provide plaintiff "reasonable accommodations," plaintiff lost vision in his left eye and thereafter began experiencing "real bad head pains[.]" *Id.* at 9.

Liberally construed, plaintiff asserts the following claims arising out of his confinement at Eastern C.F.: (1) defendants Lee, Gusman, Andola, and Russo failed to make "reasonable accommodations" regarding plaintiff's medical condition, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"), and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (2) defendants Lee, Gusman, Andola, and Russo denied plaintiff access to adequate medical care, in deliberate indifference to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution; (3) defendants Lee, Gusman, and Andola subjected plaintiff to inadequate conditions of confinement, in violation of the Eighth Amendment to the United States Constitution; (4) non-party corrections officials subjected plaintiff to excessive force, in violation of the Eighth Amendment to the United States Constitution; and (5) defendants Lee, Gusman, Andola, and Russo denied plaintiff access to adequate medical care, and defendant Andola caused plaintiff to be transferred out of the facility hospital, in retaliation for plaintiff engaging in protected activity, in violation of the First Amendment to the United States Constitution.[3]

---

[3] In addition to asserting claims against defendants Lee, Gusman, Andola, and Russo, plaintiff has also named as defendants "DSP Cheryl Morris" and "IOB Heidi Lewis." *See* Compl. at 4.

Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. Compl. at 5. For a more complete statement of plaintiff's claims, reference is made to the complaint.

## C. Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *Iqbal*, 556 U.S. at 676. "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). "[V]icarious liability is inapplicable to . . . § 1983 suits." *Iqbal*, 556 U.S. at 676.

Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*,

7

781 F.2d 319, 323-24 (2d Cir. 1986)).[4]

### 1. Eleventh Amendment Immunity

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the Section 1983 claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York*, No. 5:93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

---

[4] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal* ] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon*, 720 F.3d at 139)). For purposes of this Decision and Order, the Court assumes that all five categories under *Colon* remain valid.

Furthermore, the Eleventh Amendment bars suits for damages against state officials acting in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.").

Accordingly, to the extent that plaintiff seeks monetary damages under Section 1983 against any defendant in his or her official capacity, those claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment.[5]

### 2. Request for Injunctive Relief

"In the context of a claim for injunctive or declaratory relief, a plaintiff's allegation of past injury is insufficient to establish standing; instead the plaintiff must show a likelihood of future harm, a 'real and immediate threat of repeated injury.'" *Azim v. Vance*, 530 Fed. App'x

---

[5]   In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities). In this case, plaintiff has not alleged facts which plausibly suggest the existence of an ongoing violation of law or the Constitution with respect to his claims arising out of alleged wrongdoing at Eastern C.F. *See generally*, Compl.

44, 45 (2d Cir. 2013) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 104 (1983) (internal quotation marks omitted)) (summary order); *O'Shea v. Littleton*, 414 U.S. 488, 493-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."); *Parkell v. Senato*, 704 Fed. App'x 122, 125 (3d Cir. 2017) ("declaratory relief . . . is 'by definition prospective in nature,' . . . and cannot be issued to address past wrongs" (quoting *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013)) (summary order). "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)).[6]

In this case, plaintiff requests injunctive relief in the form of an order directing that he be provided with a "reasonable accommodation for [his] disability[.]" Compl. at 5. Because plaintiff is no longer incarcerated at Eastern C.F., his request for injunctive relief against officials at this facility is moot. Accordingly, the portion of plaintiff's complaint seeking injunctive relief against officials from Eastern C.F. is dismissed without prejudice in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. "DSP Cheryl Morris" and "IOB Heidi Lewis"

Although plaintiff has listed "DSP Cheryl Morris" and "IOB Heidi Lewis" as defendants in the caption of his complaint, *see* Compl. at 4, he has not asserted any allegations in the

---

[6] In *Shepherd*, the Court concluded that speculation that a plaintiff may be transferred again in the future does not warrant a departure from the principle enunciated in *Salahuddin*. *See* 662 F.3d at 610.

body of his complaint that these defendants were personally involved in any alleged wrongdoing that occurred at Eastern C.F.  Under such circumstances, dismissal of these defendants is appropriate.  *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, No. 96-CV-3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

The Court would add only that "'linkage in the prison chain of command' is insufficient" to implicate a state supervisory official in a Section 1983 claim.  *Hernandez v. Keane*, 341 F.3d 137, 144-45 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("mere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (internal quotation marks omitted)).  Thus, plaintiff's identification of the job title of these defendants, and reference to "high ranking" officials in the section of his complaint discussing alleged wrongdoing at Eastern C.F., is insufficient to allege their personal involvement in any alleged constitutional violation.

Accordingly, defendants Morris and Lewis, and all claims asserted against them, are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

#### 4. Defendant Russo

Plaintiff's only allegation regarding defendant Russo is that he, in response to plaintiff submitting a grievance against Lt. K. Simmons "for not moving [plaintiff's] PIMS level up after [plaintiff] did [his] 30 days post adjustment[,] . . . told them to move [plaintiff's] PIMS level[.]" Compl. at 8.  This allegation is entirely conclusory and, in any event, fails to plausibly suggest defendant Russo's personal involvement in any alleged constitutional violation.  To the contrary, plaintiff's allegation plausibly suggests that defendant Russo attempted to assist him in obtaining the relief he sought relative to his "PIMS level."

Accordingly, defendant Russo, and all claims asserted against him, are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

#### 5. ADA and Rehabilitation Act Claims Against Defendants Lee, Gusman, and Andola

Title II of the ADA "proscribes discrimination against the disabled in access to public services."  *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (citation omitted).  The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  *Id.* (citing 42 U.S.C. § 12132).[7]  "To assure those requirements are met, 'reasonable accommodation' may have to be provided to the qualified individual."  *Harris*, 572 F.3d at 73 (citation omitted).  Similarly, the Rehabilitation Act protects a "qualified individual with a disability" from exclusion of

---

[7] A state prison is a "public entity" for purposes of the ADA and the Rehabilitation Act.  *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

participation, denial of the benefits, or subjection to discrimination "under any program or activity receiving Federal financial assistance," because of the individual's disability. 29 U.S.C. § 749(a). Although there are "subtle differences between the [A]cts," the purpose of both statutes is to prevent discrimination based upon disability and, as a result, courts generally apply the same legal standard for claims arising under Title II of the ADA and Title V of the Rehabilitation Act. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

"[T]o establish a prima facie violation of either statute, a plaintiff must show '(1) that [ ]he is a qualified individual with a disability; (2) that the defendants are subject to one of the Acts; and (3) that [ ]he was denied the opportunity to participate in or benefit from defendants services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability.'" *D.K. v. Teams*, 260 F. Supp. 3d 334, 368 (S.D.N.Y. 2017) (quoting *Powell v. Nat. Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004)). "Individuals in their personal capacities are not proper defendants on claims brought under the ADA or the Rehabilitation Act, although individuals can be sued in their official capacities under these statutes." *Keitt v. New York City*, 882 F. Supp. 2d 412, 456-57 (S.D.N.Y. 2011), *report and recommendation adopted by* 2011 WL 4526147 (S.D.N.Y. Sept. 29, 2011); *Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) ("neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials.").

Liberally construed, plaintiff's complaint alleges facts which plausibly suggest that he suffered from a vision impairment during his confinement at Eastern C.F., and was denied access to recreation while housed in the facility hospital. Plaintiff does not allege that he was denied recreation after he was transferred to SHU. Thus, the allegations in the complaint

13

plausibly suggest that plaintiff was denied recreation because he was housed in the facility

hospital, and not because of his vision impairment. As a result, to the extent that, liberally

construed, plaintiff's complaint can be read to encompass a claim against the named

defendants in their official capacities, his claims are nonetheless deficient because he fails to

allege facts which plausibly suggest that he was treated differently than other inmates

because of his disability. *See Roberts v. City of New York*, No. 14-CV-5198, 2016 WL

4146135, at *9 (S.D.N.Y. Aug. 2, 2016) (dismissing ADA claim where "[t]he complaint fail[ed]

to allege that Plaintiff was excluded from participation in any program or activity, or otherwise

treated differently, because of the disability"); *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL

3972514 at *19 (S.D.N.Y. Aug. 2, 2013) ("[T]he Court need not engage in an extensive

analysis of the ADA requirements because Plaintiff makes absolutely no allegation that he

was discriminated against, or that Defendants failed to provide him with a reasonable

accommodation—i.e., railings on the walkway or an alternative to traveling through the

walkway—because of his disability. . . . Thus, Plaintiff's ADA claim is DISMISSED."); *Canales

v. New York City Health & Hosps. Corp.*, No. 12-CV-3305, 2014 WL 2217001, at *5 n.5

(S.D.N.Y. May 12, 2014) ("As plaintiff does not allege he was treated differently because of

any disability, the amended complaint fails to allege discriminatory animus for purposes of the

ADA or the Rehabilitation Act."); *Rosado v. Herard*, No. 12-CV-8943, 2014 WL 1303513, at

*6 (S.D.N.Y. Mar. 25, 2014) (dismissing ADA and Rehabilitation Act where plaintiff failed to

"plead[ ] facts demonstrating that he was denied access to therapeutic group sessions

because of a disability").

  Accordingly, plaintiff's ADA and Rehabilitation Act claims are dismissed pursuant to 28

U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief

may be granted.

### 6. Equal Protection Claim Against Defendants Lee, Gusman, and Andola

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

Here, the complaint lacks allegations which suggest upon which basis plaintiff was unequally treated. Moreover, assuming that plaintiff has intended to assert an equal protection claim under a "class of one" theory, the complaint is devoid of any allegations that plaintiff was intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *See Village of Willowbrook*, 528 U.S. at 564. In fact, the complaint fails to identify any individuals treated differently than plaintiff under a similar situation. Instead, plaintiff alleges only that his Fourteenth Amendment rights were violated because he was denied "reasonable accommodations[.]" This conclusory allegation is not

15

enough for the claim to survive sua sponte review. *See Iqbal*, 556 U.S. at 678 (concluding that a pleading that only "tenders naked assertions devoid of further factual enhancement" will not survive sua sponte review) (internal quotations and alterations omitted); *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *see also Thomas v. Pingotti*, No. 9:17-CV-0300 (GTS/DEP), 2017 WL 3913018, at *7 (N.D.N.Y. Sept. 6, 2017) ("Conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are patently insufficient to plead a valid claim under the Equal Protection clause."); *see also Butler v. Bridgehampton Fire Dist.*, No. 14-CV-1429, 2015 WL 1396442, at *4-5 (E.D.N.Y. Mar. 25, 2015) (dismissing the plaintiff's equal protection claim under the selective enforcement and class of one theories because the complaint "only discusse[d] the harmful actions [the defendants] took with respect to [the] [p]laintiff, but there [was] no discussion whatsoever of any similarities between [the] [p]laintiff and others"); *Tuitt v. Chase*, No. 9:11-CV-0776 (DNH/TWD), 2014 WL 2927803, at *8 (N.D.N.Y. June 27, 2014) ("While Plaintiff cursorily alleges that he 'suffered adverse treatment f[ro]m other inmates because he attempted to resolve . . . issues through the use of grievances,' he does not identify any particular similarly situated individuals who received different treatment. . . . Such cursory allegations do not meet the plausibility standard required by *Twombly* and *Iqbal*.").

Accordingly, plaintiff's Fourteenth Amendment equal protection claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 7. Medical Indifference Claims Against Defendants Lee, Gusman, and Andola

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976). The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id.*; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing, inter alia, *Estelle*). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden*, 186 F.3d at 262 (With respect to the subjective element, a

plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'").

The protections afforded by the Eighth Amendment do not extend to remedy harms which may be inflicted as a result of conduct amounting to negligence or medical malpractice but not encompassing conscious disregard of an inmate's health. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

Additionally, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703. "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.*; *Graham v. Gibson*, No. 04-CV-6088, 2007 WL 3541613, at *5 (W.D.N.Y. Nov. 14, 2007) ("Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation."); *Jones v. Westchester County Dept. of Corrs. Med. Dept.*, 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008) (The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.'").

Here, the basis for plaintiff's medical indifference claim is unclear. Plaintiff alleges that he was removed from the facility hospital and sent to SHU by defendant Andola on October 11, 2017, because he insisted on receiving recreation after he was told it was not allowed. Compl. at 6. Plaintiff further alleges that defendants Gusman and Andola allowed him to remain in SHU even though it was "very dirty" and placed him at a "high risk" of contracting an eye infection, because they did not want to allow him to reside in the facility hospital and

18

receive recreation.  *Id.* at 6-7.  Plaintiff also alleges more generally that "Eastern Correctional Facility" denied him "reasonable accommodations" after he suffered "a mental/emotional breakdown."  *Id.* at 7.

As an initial matter, plaintiff does not allege any facts which plausibly suggest that he was denied medical treatment, or experienced a worsening medical condition, while in SHU, and his allegation that he communicated with defendants Gusman and Andola about his concerns regarding the "very dirty" SHU environment plausibly suggests that these defendants visited plaintiff while he was confined there.  Moreover, the refusal to treat plaintiff at his desired location does not state a claim for medical indifference.  *See Purdie v. Graham*, No. 9:09-CV-971 (GTS/ATB), 2011 WL 941283, at *7 (N.D.N.Y. Jan. 19, 2011) ("The decision not to refer plaintiff to an outside hospital, and Nurse Quinn's decision that he required mental health treatment does not constitute deliberate indifference, even if contrary to plaintiff's preferences."), *report and recommendation adopted by* 2011 WL 940469 (N.D.N.Y. Mar. 16, 2011); *Ramey v. Perez*, No. 13-CV-0017, 2014 WL 407097, at *6 (S.D.N.Y. Jan. 31, 2014) ("Plaintiff believes that he should have been taken to the hospital, but he has no right to receive the medical treatment of his choice; he only has the right not to be denied medical treatment altogether."); *Whitley v. Bowden*, No. 17-CV-3564, 2018 WL 2170313, at *10 n.15 (S.D.N.Y. May 10, 2018) ("[T]o the extent that Plaintiff would have 'prefer[red] a different treatment,' such as referring him to an outside hospital or calling poison control, these claims 'do[ ] not give rise to an Eighth Amendment violation,'" (quoting *Chance*, 143 F.3d at 703)).

With respect to plaintiff's allegation that he suffered "a mental/emotional breakdown" at an unidentified date, such an allegation is entirely conclusory and affords no basis for the Court to evaluate whether this condition was objectively sufficiently serious.  In any event,

plaintiff also alleges that he was prescribed medication for depression and anxiety following his "breakdown."  Compl. at 7.  Thus, plaintiff has also failed to allege facts which plausibly suggest that any named defendant acted with subjective deliberate indifference with regard to plaintiff's "breakdown."

Lastly, plaintiff's allegation that he did not receive a "reasonable accommodation" or have his medical permits "honored" is also entirely conclusory.  Plaintiff does not allege what "reasonable accommodations" he sought, what medical permits were not "honored," who denied him "reasonable accommodations" and refused to honor medical permits, or how his medical condition was impacted by these actions.

For these reasons, plaintiff's medical indifference claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 8. Conditions-of-Confinement Claims Against Defendants Lee, Gusman, and Andola

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety."  *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981).  To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element.  *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996).  A plaintiff must demonstrate that (1) the

20

conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Jolly*, 76 F.3d at 480, and (2) the defendants acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991).

Here, the Court has liberally construed the complaint to assert a conditions-of-confinement claim based on plaintiff's allegations that SHU was "very dirty" and exposed him to a "high risk" of an infection. These allegations, however, are entirely conclusory and do not plausibly suggest that the conditions of plaintiff's confinement placed him at a substantial risk of serious harm. Moreover, the complaint lacks any allegations which plausibly that defendants Gusman and Andola knew, by virtue of plaintiff's alleged communications with them about his concern over contracting an infection, that plaintiff's confinement conditions deprived him of basic human needs such that their alleged refusal to have plaintiff removed from SHU might plausibly suggest subjective deliberate indifference.

Accordingly, plaintiff's Eighth Amendment conditions-of-confinement claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 9. Excessive Force Claim

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson*, 501 U.S. at 296-97; *Estelle*, 429 U.S. at 104. This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2)

objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden*, 186 F.3d at 262-63 (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).[8]

"The Eighth Amendment [also] requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dept. of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer*, 511 U.S. at 832-33). Law enforcement officials, including prison officials, can be held liable under § 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *see also Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (prison official's Eighth Amendment duty to take reasonable measures to guarantee the safety of inmates in their custody includes a duty to protect inmates from harm threatened by other officers).

In this case, plaintiff alleges that Lt. K. Simmons had him "extracted" from his SHU cell, after which he was subjected to "excessive force" by unidentified corrections officials who "popped" his stitches and injured his chest. Compl. at 8-9, 22. Plaintiff has not named Corrections Lieutenant K. Simmons as a defendant. Nor has he identified any of the correctional officials who allegedly assaulted him, or sued them as "John Doe" or "Jane Doe" defendants. Moreover, it does not appear from the allegations in the complaint that any of the named defendants were personally involved in the alleged assault.

---

[8] In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

Since only individuals personally involved in a constitutional deprivation face liability under Section 1983, plaintiff's failure to identify the parties responsible for allegedly assaulting him requires the dismissal of his excessive force claim. *See Roman v. Walsh*, No. 5:13-CV-1273 (GLS/ATB), 2014 WL 316724, at *3, 7 (N.D.N.Y. Jan. 28, 2014) (adopting recommendation that excessive force claim be dismissed based on plaintiff's failure to "name[] any person responsible for the excessive force"); *Renelique v. Doe*, No. 99-CV-10425, 2003 WL 23023771, at *12 n.7 (S.D.N.Y. Dec. 29, 2003) ("To the extent the Amended Complaint can be read to assert a deliberate indifference claim based on a denial of medical care to plaintiff after the March 24, 1997 assault, plaintiff has not named as defendants any individuals who were personally involved in the alleged incident. Since . . . only the individuals personally involved in a constitutional deprivation face liability under Section 1983, plaintiff's failure to identify the parties responsible for allegedly denying him medical care after the March 24, 1997 assault requires the dismissal of this aspect of his deliberate indifference claim."); *see also* Fed. R. Civ. P. 10(a) ("the title of the complaint must name all the parties").

Accordingly, plaintiff's excessive force claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 10.  Retaliation Claims Against Defendants Lee, Gusman, and Andola

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis*, 320 F.3d at 352 (*quoting Dawes v. Walker*,

23

239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action."  *Davis*, 320 F.3d at 352 (*quoting Dawes*, 239 F.3d at 492).  "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."  *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  Finally, even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).

The filing of a prison grievance is a constitutionally protected activity for the purpose of meeting the first prong of the retaliation test.  *See Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir. 1988) (same).

Here, plaintiff alleges that he complained to defendant Andola about not receiving recreation after she advised him that he was not entitled to recreation while in the facility hospital, and in response, she "kicked [plaintiff] out [of] the hospital and sen[t] [him] back to the SHU."  Compl. at 6.  Plaintiff further alleges that he was denied adequate medical care and "reasonable accommodations" after he was removed from the facility hospital, and wrote to defendant Lee about ongoing harassment, which defendant Lee failed to remedy.  *Id.* at 7-9.

As an initial matter, plaintiff does not allege that he had a right to remain in the facility hospital (or in general population) when he was transferred to SHU.  Thus, the fact that

plaintiff was transferred from the prison hospital to SHU does not, in and of itself, plausibly suggest that plaintiff's placement in SHU constituted adverse action.  *See, e.g., Cruz v. Grosso*, No. 9:13-CV-0030 (FJS/TWD), 2014 WL 2176256, at *7 (N.D.N.Y. May 23, 2014) ("[T]he transfer of a prisoner is not considered an 'adverse action' unless it results in the prisoner being subjected to more onerous conditions."); *Warren v. Goord*, No. 99-CV-296, 2006 WL 1582385, at *15 (W.D.N.Y. May 26, 2006) (since complaint was "devoid of any allegations that the transfer [of inmate plaintiff to infirmary], by itself, resulted in any additional deprivation of privileges as required to support a finding that Warren's transfer resulted in some cognizable injury to Warren's First Amendment rights," transfer "d[id] not, as a matter of law, constitute action 'that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights,' and, thus, d[id] not provide the requisite 'adverse action' necessary to support the second prong of a First Amendment retaliation claim" (quoting *Dawes*, 239 F.3d at 493)); *Ali v. Szabo*, 81 F. Supp. 2d 447, 467 (S.D.N.Y. 2000)(dismissing prisoner's retaliation claim where prisoner did not allege any injury as a result of defendant's action).

Moreover, even assuming that transferring plaintiff to SHU may be considered adverse action, the complaint lacks allegations which plausibly suggest that the transfer occurred because plaintiff engaged in protected activity.  Rather, the allegations in the complaint plausibly suggest that defendant Andola gave plaintiff a choice between recreation and remaining in the facility hospital, and caused plaintiff to be removed from the hospital after plaintiff communicated his desire for recreation.

For these reasons, plaintiff's retaliation claim against defendant Andola is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Turning to plaintiff's retaliation claim based on allegedly being denied adequate medical care and "reasonable accommodations," plaintiff's allegations are entirely conclusory. Plaintiff fails to allege, for example, what medical treatment he sought that he was denied, who denied him such treatment, and when the alleged denial(s) occurred. The complaint also lacks any allegations which plausibly suggest that any treating official was aware of plaintiff's engagement in protected activity. Accordingly, plaintiff's retaliation claim based on allegedly being denied adequate medical care and "reasonable accommodations" is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Finally, with regard to plaintiff's retaliation claim against defendant Lee based on his alleged failure to remedy ongoing harassment, the law is well-settled that "[v]erbal harassment or threats are generally not considered adverse action for the purpose of a First Amendment retaliation claim." *McFadden v. Friedman*, No. 9:12-CV-0685 (GTS/CFH), 2015 WL 5603433, at *17 (N.D.N.Y. Sept. 23, 2015) (citation omitted). While "verbal threats may constitute adverse action for purpose of a First Amendment retaliation if the threat is sufficiently specific[,]" *id.*, the complaint in this case is devoid of any allegations which describe the alleged harassment in any detail. *See also Corley v. City of New York*, No. 1:14-CV-3202, 2017 WL 4357662, at *19 (S.D.N.Y. Sept. 28, 2017) ("Plaintiff's allegations that he was 'repeatedly harassed' about kosher meals and that unit officers observed the food he ate, without more, are too vague to amount to an adverse action, however rude or upsetting they might have been."); *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 326 (W.D.N.Y. 2007) ("[V]ague intimations of some unspecified harm generally will not rise to the level of adverse action for the purpose of a First Amendment retaliation claim.").

Because plaintiff has not adequately alleged that he was subjected to any adverse action as a result of his engagement in protected activity, plaintiff cannot succeed on a claim against defendant Lee based on a failure-to-remedy theory of liability. *See Toole v. Connell*, No. 9:04-CV-0724 (LEK/DEP), 2008 WL 4186334, at *7 (N.D.N.Y. Sep. 10, 2008) (Peebles, M.J.), *report and recommendation adopted by* 2008 WL 4186334, at *1 (supervisory defendant cannot be liable for failing to investigate or correct conduct that has already been found to be not actionable under section 1983); *see also Linares v. Mahunik,* No. 9:05-CV-625 (GLS/RJT), 2006 WL 2595200, at *11 (N.D.N.Y. Sept. 11, 2006), *report and recommendation adopted by* 2006 WL 2595200, at *1 (plaintiff could not "sustain a supervisory liability claim as there was no wrong for [supervisor-defendant] to remedy since there [was] no constitutional violation").

Accordingly, plaintiff's retaliation claim against defendant Lee is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D.     Opportunity to File an Amended Complaint

The Second Circuit has held that a district court "should not dismiss [a pro se plaintiff's complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (internal quotation omitted). As a result, the Court will afford plaintiff an opportunity to present a proposed amended complaint with respect to the claims dismissed without prejudice.

Any amended complaint submitted by plaintiff in response to this Decision and Order must set forth a short and plain statement of the facts he relies on in support of his claim that

specific individuals named as defendants in that pleading engaged in acts of misconduct or wrongdoing which violated his constitutional rights and over which this Court may properly exercise jurisdiction. Plaintiff's amended complaint, which shall supersede and replace in its entirety the original complaint, must be a complete pleading which sets forth all of the claims that plaintiff wants this Court to consider as a basis for awarding relief herein. Plaintiff's amended complaint must also be signed by him in accordance with Fed. R. Civ. P. 11.

Plaintiff is advised that his failure to file an amended complaint **within thirty (30) days** of the filing date of this Decision and Order will result in dismissal of this action without prejudice without further Order of the Court.

## III.  CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's Section 1983 claims for monetary relief against defendants in their official capacities are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[9] and it is further

**ORDERED** that if plaintiff wishes to proceed with this action he must file an amended complaint **within thirty (30) days** of the filing date of this Decision and Order as set forth above; and it is further

---

[9] Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011) (summary order). Amendment of the complaint to assert official capacity claims for monetary relief under Section 1983 would be futile.

**ORDERED** that upon the filing of an amended complaint as directed above, the Clerk shall return the file to this Court for further review; and it is further

**ORDERED** that in the event plaintiff fails to file a signed amended complaint **within thirty (30) days** of the filing date of this Decision and Order, the Clerk shall enter judgment dismissing this action without prejudice due to plaintiff's failure to state a claim upon which relief can be granted and to comply with the terms of this Decision and Order, without further order of this Court; and it is further

**ORDERED** that the Clerk shall **TERMINATE** each of the defendants from Wende Correctional Facility and Sullivan Correctional Facility because the claims against these defendants were not transferred to this District pursuant to the Transfer Order (Dkt. No. 11);

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

Dated:     December 19, 2018
           Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge